```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MEGAN K. ABATE,

                    Plaintiff,
                                              MEMORANDUM & ORDER
           -against-                          18-CV-2040 (JS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Daniel Adam Osborn, Esq.
                    Osborn Law
                    43 West 43rd Street, Suite 131
                    New York, New York 10036

For Defendant:      Robert B. Kambic, Esq.
                    Vincent Lipari, Esq.
                    United States Attorney's Office
                    Eastern District Of New York
                    610 Federal Plaza
                    Central Islip, New York 11722
```

SEYBERT, District Judge:

Plaintiff Megan K. Abate ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of her application for Social Security Disability Insurance Benefits. (Compl., D.E. 1, ¶¶ 1, 8.) Presently pending before the Court are the parties' cross-motions for judgment on the pleadings. (Pl. Mot., D.E. 18; Comm'r Mot., D.E. 23.) For the following reasons, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED.

BACKGROUND[1]

I.  Procedural History

On October 30, 2015, Plaintiff completed an application for disability insurance benefits alleging that since May 20, 2015, bipolar disorder, depression, insomnia, and anxiety rendered her disabled. (R. 49-50, 132-33.) After Plaintiff's claim was denied (R. 62-73), she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 74-88.) On June 20, 2017, Plaintiff, accompanied by counsel, appeared for a hearing before the ALJ. (R. 31-48.) A vocational expert testified that Plaintiff could find gainful employment as a laundry worker, a small parts assembler, and a document preparer. (R. 45.)

In a decision dated October 13, 2017, the ALJ found that Plaintiff was not disabled. (R. 15-30.) On February 1, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (R. 1-6.)

Plaintiff initiated this action on April 5, 2018[2] (see Compl.) and moved for judgment on the pleadings on

---

[1] The background is derived from the administrative record. ("R.", D.E. 8.) For purposes of this Memorandum and Order, familiarity with the administrative record is presumed. The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

[2] This case was reassigned to the undersigned on May 25, 2019. (See D.E. 25.)

2

February 16, 2019 (Pl. Mot.; Pl. Br., D.E. 19; Pl. Reply, D.E. 26). On May 15, 2019, the Commissioner filed a cross-motion for judgment on the pleadings. (Comm'r Mot.; Comm'r Br., D.E. 24.)

II. The ALJ's Decision

The ALJ found that Plaintiff met the insured-status requirements of her claim through December 31, 2019. (R. 18.) Next, the ALJ applied the familiar five-step disability analysis and concluded that Plaintiff was not disabled from May 20, 2015, the alleged disability-onset date, through October 13, 2017, the date of the decision. (R. 18-26); see 20 C.F.R. § 404.1520. At steps one through three, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date, (R. 18); (2) Plaintiff had severe impairments consisting of bipolar disorder, depressive disorder, anxiety disorder, and insomnia (R. 18); and (3) Plaintiff's impairments did not meet or medically equal the severity of any of the impairments listed in Appendix 1 of the Social Security regulations (R. 18-19).

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] would be limited to simple work in a low stress environment, defined as only occasional decision making and occasional changes in the work setting and occasional interaction

3

with public, coworkers and supervisors." (R. 19-24.) The ALJ found "no indications of physical limitations." (R. 24.)

Proceeding to steps four and five, the ALJ found that while Plaintiff is unable to perform her past relevant work as a telephone solicitor (R. 24), considering her RFC, age (37 years-old at the alleged on-set date), education, and work experience, Plaintiff could make a successful adjustment to work existing in significant numbers in the national economy such as a laundry worker, small parts assembler, and document preparer (R. 24-25). As a result, the ALJ determined that Plaintiff is not disabled. (R. 26.)

 A. <u>The ALJ's RFC Determination</u>

The ALJ found that Plaintiff has the RFC to "perform a full range of work at all exertional levels" but was limited to "simple work in a low stress environment, defined as only occasional decision making and occasional changes in the work setting and occasional interaction with public, coworkers, and supervisors." (R. 19-20.) In reaching this conclusion, the ALJ reviewed Plaintiff's testimony and found it inconsistent and "not indicative of total disability" because Plaintiff does some cooking, cleaning, and household chores and is able to drive and go out alone. (R. 20, 24.) The ALJ cited to Plaintiff's ability to "participate in the hearing without any difficulties" and to "respond to questions in an appropriate manner" to "cast doubt

4

upon" her allegations of total disability. (R. 24.) Moreover, the ALJ found that Plaintiff's testimony about the severity of her symptoms and limitations was not well-supported by treatment records from a consultative examination and progress notes from her treating psychiatrist, Sal Sarmiento, M.D ("Dr. Sarmiento"). (R. 20-21.)

The ALJ also summarized Plaintiff's medical records from before and after the alleged onset date (R. 21-22) and concluded that although Plaintiff's medical impairments could be reasonably expected to produce her symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence" (R. 21).

The ALJ then reviewed the medical opinion evidence from H. Rozelman, Ph. D., a non-examining medical consultant; Kathleen Acer, Ph.D., an examining consultant; Paul Herman, Ph.D, an examining consultant; and Dr. Sarmiento. (R. 22-23.) The ALJ first assigned good weight to Dr. Rozelman's opinion that Plaintiff "could perform simple work and make simple decisions" because it is "considered expert opinion evidence from a non-examining source." (R. 22; R. 53.)

Next, the ALJ assigned less weight to the opinion of Dr. Acer who conducted a one-time consultative examination but did not review the entire medical evidence. (R. 22.) Dr. Acer opined

5

that Plaintiff could follow and understand simple directions and instructions and appropriately perform simple, routine tasks but "may have difficulty maintaining attention and concentration, keeping a regular schedule, learning and performing complex tasks independently, adequately relating with others, and dealing with stress." (R. 22; R. 255.)  The ALJ discounted Dr. Acer's opinion that Plaintiff "may have difficulty" with certain tasks as "speculative." (R. 22.)

The ALJ assigned some weight to Dr. Herman's opinion "based on a complete mental examination." (R. 22-23.)  Dr. Herman conducted a one-time consultation and opined that Plaintiff's symptoms are "consistent with psychiatric problems" and that "they do not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." (R. 262.) He found that there "appear[ed] to be no evidence of limitation with respect to [Plaintiff's] ability to understand, remember, or apply simple directions or instructions; and use reason and judgment to make simple work-related decisions." (R. 262.)

Finally, the ALJ assigned little weight to Dr. Sarmiento's opinions, Plaintiff's treating psychiatrist, as "conclusionary in nature and not supported by treatment records or by the [Plaintiff's] testimony." (R. 23.)  In addition to

6

submitting his treatment notes,[3] Dr. Sarmiento submitted medical assessment forms analyzing Plaintiff's ability to do work related activities and opined that Plaintiff has "poor" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and maintain attention/concentration. (R. 268-69; see also R. 250-51 (stating that Plaintiff is "low functioning and is unable to function for work," "unable to follow simple instructions," and is "isolative; no friends.").)

## DISCUSSION

I.  Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether Plaintiff is entitled to disability benefits.  Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ.  See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).  If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists.  See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

---

[3] The first treatment note from Dr. Sarmiento in the record is dated May 13, 2015.  (See R. 225.)

II. Analysis

Plaintiff first contends that the ALJ violated the treating physician rule by (1) failing to give controlling weight to Plaintiff's treating physician, Dr. Sarmiento and not giving good reasons for that determination, and (2) giving great weight to the opinion of non-treating and non-examining consultant Dr. Rozelman. (Pl. Br at 15-19; Pl. Reply at 3.) Plaintiff further argues that the ALJ's decision "is not supported by substantial evidence" because the ALJ failed to consider (1) the limiting effects of Plaintiff's anxiety disorder; (2) the side effects of Plaintiff's medication; and (3) Plaintiff's obesity. (Pl. Br. at 20-25.) The Commissioner contends that the ALJ correctly weighed the medical opinion testimony and is supported by substantial evidence. (Comm'r Br. at 17-24.)

A. The Treating Physician Rule[4]

The "treating physician rule" provides that the medical opinions and reports of [Plaintiff's] treating physicians are to be given "special evidentiary weight." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see 20 C.F.R. § 404.1527(c)(2). However, the opinion of a treating physician "need not be given controlling weight where [it is] contradicted

---

[4] "[T]he Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." Williams v. Colvin, No. 16-CV-2293, 2017 WL 3701480, at *1 (E.D.N.Y. Aug. 25, 2017).

8

by other substantial evidence in the record." Molina v. Colvin, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (internal quotation marks and citation omitted).

When an ALJ does not afford controlling weight to the opinion of a treating physician, the ALJ must consider several factors: "(1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). The ALJ must also set forth "'good reasons' for not crediting the opinion of a [plaintiff's] treating physician." Id. at 287. An ALJ provides "'good reasons' for discounting a treating physician's opinion that reflect in substance the factors as set forth in [Section] 404.1527(d)(2), even though the ALJ declines to examine the factors with explicit reference to the regulation." Crowell v. Comm'r of Soc. Sec., 705 F. App'x 34, 35 (2d Cir. 2017) ("While the ALJ did not explicitly discuss the treating physician rule, he nonetheless stated that [the physician's] opinion . . . was contradictory to the rest of the record evidence.").

Here, the ALJ did not provide good reasons for assigning "little weight" to Dr. Sarmiento's opinions. Indeed, "the ALJ

9

made no attempt to 'reconcile' or 'grapple with' the apparent longitudinal inconsistencies in [Plaintiff's] mental health--one of the motivations behind [the] procedural requirement of explicit consideration of 'the frequency, length, nature, and extent of a physician's treatment.'" Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) (quoting Selian v. Astrue, 708 F.3d 409, 418-19 (2d Cir. 2013)). "This failure is especially relevant here because the first [ ] factor [the length of the treatment relationship and frequency of the examination], and therefore evidence supporting its satisfaction, is of heightened importance in the context of [Plaintiff's] claimed impairment: depression," bipolar disorder, panic disorder, and generalized anxiety disorder. Id. Moreover, "'[c]ycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a [plaintiff] is capable of working.'" Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014)). "When viewed alongside the evidence of the apparently cyclical nature" of Plaintiff's mental impairments, the ALJ's "cherry-picked treatment notes do not provide 'good reasons' for minimalizing" Dr. Sarmiento's opinion. Id.

Further, the ALJ committed error in assigning "good weight" to Dr. Rozelman's opinion that was based solely on his

10

review of the record.[5]  "In the context of evaluating a mental disability, 'it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient.'" Maldonado v. Comm'r of Soc. Sec., No. 12-CV-5297, 2014 WL 537564, at *15 (E.D.N.Y. Feb. 10, 2014) (quoting Fofana v. Astrue, No. 10-CV-0071, 2011 WL 4987649, at *20 (S.D.N.Y. Aug. 9, 2011)).  As such, "the conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little, if any, weight." Id. (internal quotation marks and citation omitted).  Therefore, it was error for the ALJ to assign Dr. Rozelman's RFC assessment "good weight" because he did not examine or treat Plaintiff and "relied solely on the medical records in the administrative record to form [his] opinion." Id.

Moreover, the ALJ assigned "less weight" and "some weight" to consulting examiners Dr. Acer and Dr. Herman, respectively.  (See R. 22-23.)  To the extent the ALJ relied on these opinions in deciding to assign little weight to Dr. Sarmiento's opinion, the Second Circuit has cautioned against reliance on "the findings of consultative physicians after a single examination" especially where, as here, Plaintiff alleges mental

---

[5] In reviewing Dr. Rozelman's assessment, it is not entirely clear to the Court what records he reviewed.

11

health disability. Estrella, 925 F.3d at 98 (internal quotation marks and citation omitted). "This concern is even more pronounced in the context of mental illness where [ ] a one-time snapshot of a [plaintiff's] status may not be indicative of her longitudinal mental health." Id. Accordingly, the opinions of Dr. Acer and Dr. Herman do not provide "good reasons" for minimizing Dr. Sarmiento's opinions. See, e.g., Santiago v. Barnhart, 441 F. Supp. 2d 620, 629 (S.D.N.Y. 2006).

Moreover, to the extent the ALJ's finding that the "record shows that the [plaimtiff] underwent some therapy but discontinued and only saw her psychiatri[st] monthly," can be construed as discounting Dr. Sarmiento's opinion as "conservative," that is "not a 'good reason' to reject a treating physician's medical opinion." (R. 24 (emphasis added)); Destina v. Berryhill, No. 17-CV-2382, 2018 WL 4964103, at *6 (E.D.N.Y. Oct. 15, 2018) (citing Morris v. Colvin, No. 12-CV-5600, 2016 WL 7235710, at *9 (E.D.N.Y. Dec. 14, 2016)). "In this Circuit, the opinion of a treating physician is not 'to be discounted merely because he has recommended a conservative treatment regimen.'" Id. (quoting Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)) (subsequent citations omitted). "Such a reason 'falls far short of the standard for contradictory evidence required to override the weight normally assigned the treating physician's opinion.'" Id. (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)).

12

Indeed, the "failure to seek treatment does not constitute substantive evidence to discount the treating physician's opinion." Hanlon v. Saul, No. 18-CV-7090, 2020 WL 999900, at *6 (E.D.N.Y. Mar. 2, 2020). A delay in treatment "is not so remarkable when dealing with mental illnesses" because they "often go untreated for long periods of time." Id. (internal quotation marks and citation omitted); see also Cataneo v. Astrue, No. 11-CV-2671, 2013 WL 1122626, at *20 (E.D.N.Y. Mar. 17, 2013) ("The inference [that the plaintiff's failure to seek treatment undermines her claim of disability] is less plausible for an individual with a mental impairment with symptoms that include social anxiety and isolation."). "It is obvious that persons suffering from mental illness frequently do not seek treatment because of the effects of the disease itself, which make them unaware of their disease or resistant to treatment. Any inference drawn from the delay in treatment, therefore, does not constitute substantial evidence for the conclusion that Plaintiff was not disabled." Hanlon, 2020 WL 999900, at *6.

Thus, the ALJ did not follow the treating physician rule and on remand the ALJ should "endeavor to obtain enough information to determine whether the opinion" of Dr. Sarmiento is entitled to controlling weight. Murphy v. Saul, No. 17-CV-1757, 2019 WL 4752343, at *7 (E.D.N.Y. Sept. 30, 2019); Balodis v. Leavitt, 704 F. Supp. 2d 255, 268 (E.D.N.Y. 2010).

B. Substantial Evidence

The Court is not persuaded that the RFC was supported by substantial evidence. First, as stated, "[a]ny inference drawn from the delay in treatment [ ] does not constitute substantial evidence for the conclusion that Plaintiff was not disabled." Hanlon, 2020 WL 999900, at *6.

Second, the ALJ assigned little weight to Dr. Sarmiento's opinions as "conclusionary in nature and not supported by treatment records or by the [plaintiff's] testimony." (R. 23.) However, Dr. Sarmiento's "records contain only raw medical evidence from each particular visit," such as that Plaintiff was "asymptomatic with no depressive or bipolar symptoms" (R. 277), and "do not assess [Plaintiff's] ability to engage in competitive work on a regular and continuing basis despite" her impairments. Stein v. Colvin, No. 15-CV-6753, 2016 WL 7334760, at *4 (W.D.N.Y. Dec. 19, 2016); see 20 C.F.R. § 416.945(c) (the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing her mental abilities).

Thus, in finding that Dr. Sarmiento's opinions were "conclusory" and inconsistent, the ALJ likely relied on medical records that "record, diagnose, and address symptoms" rather than records that "assess functional abilities." Newson v. Comm'r of Soc. Sec., No. 17-CV-2718, 2019 WL 6173400, at *2 (E.D.N.Y.

14

Nov. 20, 2019) (internal quotation marks and citation omitted); Pensiero v. Comm'r of Soc. Sec., No. 19-CV-00279, 2019 WL 6271265, at *4 (D. Conn. Nov. 25, 2019) ("When the treatment notes and test results from the [plaintiff's] treating physicians do not assess how the [plaintiff's] symptoms limit [her] functional capacities, remand is warranted.") (internal quotation marks and citation omitted). Accordingly, it is not clear that Dr. Sarmiento's treatment notes and opinions are inconsistent.

Given Plaintiff's treatment plan, Dr. Sarmiento's opinions, and Plaintiff's testimony, the ALJ had an obligation to attempt to clarify any alleged inconsistency between Dr. Sarmiento's RFC opinions and the evidence in the record, including evidence that Plaintiff's "condition significantly improved." (See R. 24); see also Corrigan v. Comm'r of Soc. Sec. Admin., No. 18-CV-5686, 2019 WL 5212850, at *5 (E.D.N.Y. Oct. 16, 2019); Delacruz v. Astrue, No. 10-CV-05749, 2011 WL 6425109, at *15 (S.D.N.Y. Dec. 1, 2011), R&R adopted, 2011 WL 6425101 (S.D.N.Y. Dec. 21, 2011); Newson, 2019 WL 6173400, at *3 ("It is the ALJ's job to grapple with inconsistencies and develop an incomplete record further.") (citation omitted).

Therefore, remand is appropriate to enable the ALJ to fully develop the record regarding Dr. Sarmiento's opinions on Plaintiff's mental impairments on her ability to work because "[a]t a minimum, the ALJ likely should have contacted [Dr. Sarmiento]

15

and sought clarification of his report." Selian, 708 F.3d at 421 see also Christiansen v. Colvin, No. 15-CV-2932, 2016 WL 4384722, at *8 (E.D.N.Y. Aug. 15, 2016).

In light of these findings, the Court need not address Plaintiff's additional contentions. Plaintiff may address those issues on remand.

CONCLUSION

Accordingly, Plaintiff's motion (D.E. 18) is GRANTED and the Commissioner's motion (D.E. 23) is DENIED. This matter is REMANDED for proceedings consistent with this Memorandum and Order. The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: May  4 , 2020
       Central Islip, New York